

LAWRENCE S. KRASNER
DISTRICT ATTORNEY

**DISTRICT ATTORNEY'S OFFICE**
THREE SOUTH PENN SQUARE
PHILADELPHIA, PENNSYLVANIA 19107-3499
(215) 686-8000

March 20, 2020

Honorable Gene E.K. Pratter
United States District Court Judge
United States District Court, Eastern District of Pennsylvania
U.S. Courthouse
601 Market Street, Room 10613
Philadelphia, PA 19106-1723

> **RE:   Roney v. Wetzel, et al., No. 14-2083**

Dear Judge Pratter,

At the oral argument on petitioner's motion for additional discovery in this case,

Your Honor requested that respondents provide certain information.  Respondents

herein respectfully respond to the Court's requests.

## BACKGROUND

In 1996, petitioner shot and killed a Philadelphia police officer during a bank

robbery.  A jury sitting in the Philadelphia Court of Common Pleas convicted him of first-

degree murder and related charges and sentenced him to death.  The trial prosecutors

were Roger King, Esquire, and Paul Riley, Esquire.  Petitioner's judgment of sentence

was affirmed on direct and collateral review in state court.

On July 23, 2014, petitioner filed a petition for a writ of habeas corpus in federal

court.  On December 3, 2014, he filed a motion for discovery.  On August 5, 2015, the

Honorable L. Felipe Restrepo ordered that the discovery motion was granted in part and

denied without prejudice in part.  In accordance with this order, on September 8, 2015,

respondents sent to Judge Restrepo, for his *in camera* review, documents responsive to

petitioner's request for discovery of the trial prosecutor's notes from the voir dire and

any other documents relating to the exercise of peremptory challenges in this case.  In

addition, pursuant to Judge Restrepo's discovery order, on December 4, 2015,

respondents disclosed various materials to petitioner.

On December 17, 2015, petitioner filed a motion to compel production and to

permit third-party discovery.  Specifically, petitioner sought permission to serve third-

party discovery requests on the Federal Bureau of Investigation (FBI) and NFL Films.

Respondents filed a response to this motion on December 24, 2015.  Respondents took

no position on the request for third-party discovery.

On January 20, 2016, the case was reassigned from Judge Restrepo to Your

Honor.

On April 10, 2018, this Court ordered respondents to disclose the prosecutor's

jury selection notes to petitioner.  On April 19, 2018, in accordance with this order,

respondents provided to petitioner the jury selection documents that had previously

been submitted to the Court for *in camera* review.

On June 18, 2018, petitioner filed a second petition for relief under

Pennsylvania's Post Conviction Relief Act (PCRA) in the Philadelphia Court of Common

Pleas.[1]

---

[1] Petitioner amended this PCRA petition on November 27, 2018.  On November 19,
2019, the Court of Common Pleas ruled that any amendments to the PCRA petition filed
with the court were accepted, that any future amendments to the PCRA petition
necessitated by information found during discovery in federal court may be filed and will

Beginning in the fall of 2018, respondents allowed petitioner access to the complete police and prosecutorial files for this case.  As petitioner has described, "[t]hese files are quite voluminous, filling more than ten banker's boxes" and containing "thousands of pages of documents" as well as "dozens of envelopes of photographic evidence, multiple VHS video tapes, over a dozen audio tapes, and various items of physical evidence" (Doc. 78 at 2).

On May 6, 2019, respondents sent a letter to petitioner advising him as to whether certain law enforcement personnel he had identified were still employed by the Philadelphia Police Department and/or the Philadelphia District Attorney's Office, and describing respondents' substantial efforts to locate trial exhibit C-36.

On May 13, 2019, petitioner filed a motion for additional discovery.  In this motion, petitioner requested "any jury selection notes in [the Commonwealth's] possession and/or control that were made or taken by A.D.A. Roger King or A.D.A. Paul Riley in connection with any jury selection process in a homicide trial in which they participated as counsel for the Commonwealth in the five years leading up to the time of [p]etitioner's trial" (Doc. 85 at 3).  In addition, he requested that this Court permit him to seek third-party discovery from the FBI and NFL Films "in accordance with the rules normally governing civil litigation" (Id. at 11 n.4).  Furthermore, petitioner sought various items relating to the claim in his habeas petition that "the overwhelming police presence in the courtroom denied petitioner a fair trial and capital sentencing proceeding, in

---

be accepted, and that final resolution of the PCRA petition was stayed pending resolution of the federal habeas proceedings.

violation of the Sixth, Eighth and Fourteenth Amendments to the United States

Constitution" (Doc. 8 at 103; Doc. 85 at 12).

On May 24, 2019, this Court ordered the Philadelphia Police Department to

produce items to petitioner.  Respondents did not oppose this order.

On May 28, 2019, this Court ordered the Philadelphia Fire Department to

produce items to petitioner.  Respondents did not oppose this order.

Also on May 28, 2019, petitioner filed a request for an order directing the

Philadelphia Police Department to undertake to locate and produce trial exhibit C-36,

and any documentation related to trial exhibits C-34 and C-36.  Respondents do not

oppose this request.

On August 12, 2019, respondents filed a response in partial opposition to

petitioner's motion for additional discovery.  Respondents did not oppose petitioner's

request to take third-party discovery.  However, respondents did oppose the requests

for the prosecutors' jury selection notes and for the items related to his claim of an

overwhelming police presence.

On December 13, 2019, there was oral argument before this Court on petitioner's

motion for additional discovery.  Ultimately, Your Honor denied without prejudice

petitioner's request for discovery of items related to his claim of an overwhelming police

presence at trial.  With respect to his request for discovery of the prosecutors' jury

selection notes, the Court reserved ruling and requested additional information from

respondents.  This information is provided below.

**REQUESTED INFORMATION**

**Batson violations**

Your Honor first requested "the respondents to run a search, an in[-]house search of whether or not Mr. King or Mr. Riley have had homicide cases where there were, number one, Batson[2] challenges that were successful" (N.T. 12/13/19, 38). Respondents researched this question by searching on Westlaw and canvassing the Law Division of the Philadelphia District Attorney's Office (DAO). In addition, respondents inquired of petitioner's counsel, who conducted their own independent research. Respondents' research has not identified any case, homicide or otherwise, in which either King or Riley was ruled to have violated Batson.

**Time and Expense Associated with Jury Selection Transcripts**

Your Honor additionally requested "reliable data as to how much time and how much expense would be involved in creating copies of jury selection transcripts for any case of either of those two gentlemen [King and Riley] where there was a Batson challenge regardless of whether it was successful" (N.T. 12/13/19, 38-39). This task would require, as an initial matter, identifying all of the jury trials conducted by King and Riley. A search of the DAO's internal case management system by the DAO's Information Technology Group (IT Group) identified 105 cases handled by these prosecutors.

These results likely undercount the true number of cases King and Riley prosecuted. The IT Group reports that data for cases disposed of prior to 2010 included in the case management system can be incomplete. Moreover, both prosecutors, and

---

[2] Batson v. Kentucky, 476 U.S. 79 (1986)

especially King, had lengthy tenures with the DAO.  King served as an Assistant District

Attorney (ADA) in the DAO for over 34 years, from October 23, 1973 to June 6, 2008.

Riley served as an ADA in the DAO for over 10 years, from August 22, 1988 to

September 4, 1998.

Respondents may be able to supplement the list of cases compiled by the IT

Group by conducting computer searches of other internal databases such as the brief

bank maintained by the Law Division of the DAO, searching on Westlaw, and

interviewing Riley.[3]

Respondents have also shared the list of cases generated by the IT Group with

petitioner's counsel.  Petitioner's counsel have informed respondents that they have

identified 38 additional cases handled by King and Riley that are not identified on

respondents' list.[4]

Once respondents have identified the jury trials prosecuted by King and Riley,

they will then have to obtain the jury selection transcripts for these cases.  The

transcripts for some of the cases may be included on the Court Reporting System of the

First Judicial District of Pennsylvania (CRS).  The CRS is an on-line, searchable

database of court transcripts that can be accessed by respondents.  However,

experience has shown that not all transcripts are included on CRS.  In particular, the

transcripts of older cases are often not available on the system.

---

[3] King is deceased.

[4] Petitioner's counsel have informed respondents that they will be submitting a separate proposal to the Court identifying specific cases for which they seek jury selection information.

With respect to transcripts unavailable on CRS, respondents may be able to get these notes by manually searching the DAO's files.  The DAO's files for cases that are not actively being litigated are generally stored at an off-site storage facility.  The cost to have up to seven items delivered from the storage facility is $16.40.  To have additional items delivered costs $1.51 per item.  The number of items per case varies.  Some cases have only one or two boxes.  Other cases, like this one, involve ten or more.

The cost to respondents of obtaining the DAO's files from storage could be in the hundreds of dollars.  To take one hypothetical example, assume that there are 50 cases whose files must be retrieved from storage, and that these cases involve a total of 250 boxes.  It would not be practicable, given the limited storage space at the DAO, to have all 250 boxes delivered in one trip.  Rather, respondents would have to arrange for multiple smaller deliveries – for instance, five deliveries of 50 boxes each.   Under these circumstances, the cost of getting the boxes from storage would amount to $406.65.

A third possible source of jury selection transcripts could be the Clerk of Courts Office of the Philadelphia Court of Common Pleas.  Any relevant transcripts included in the files maintained by the Clerk of Courts Office would have to be photocopied on-site by respondents.

Having collected the jury selections transcripts of all jury trials conducted by King and Riley, respondents would then have to review these notes, which are likely to be voluminous, to determine which cases involved a challenge under Batson.

In sum, producing copies of all jury selection transcripts in cases tried by King and Riley in which a Batson challenge was raised is likely to involve multiple weeks of work and the expenditure of hundreds of dollars.

Respectfully Submitted,

/s/ Max C. Kaufman
Max C. Kaufman
Supervisor, Federal Litigation Unit

cc:    Helen A. Marino, Esquire
       Matthew C. Lawry, Esquire
       Michael Gonzales, Esquire